Kinkade, J.
 

 This case presents for consideration the question whether certain existing railroad freight rates for hauling coal are fair and reasonable. The plaintiff in error, the New York Central Railroad Company, herein referred to as the Railroad Company, hauls coal from points south of Corning, Ohio, to Baltimore, Ohio, and there delivers it at the plant of the Fairfield Paper Company, herein referred to as the Paper Company, and collects from the Paper Company a freight charge of 90 cents per ton. The correctness of this rate being in dispute between the parties, the Paper Company caused the question to be duly submitted to the Public Utilities Commission, herein referred to as the Commission. The Commission decided that the rate was excessive, and ordered the rate reduced to 76 cents per ton. The Railroad Company appeals, and brings here for the consideration of this court all of the evidence submitted to the Commission, and this evidence has been carefully reviewed by the court. We shall not attempt in this opinion to discuss this evidence in detail, but Avill state the conclusions we have reached in the matter. In respect to distances and many other attendant facts the evidence is not in serious conflict. The tonnage for Baltimore originates at. points south of Corning, Ohio, and all passes through Corning en route to Baltimore. The rate
 
 *122
 
 charged applies to a given district, though the haul is longer from some points of loading than from others.
 

 Prior to the fixing of the rate of 90 cents per ton, there had existed for some time a freight rate for this same service of $1.13 per ton. The Paper Company had protested this rate to the Commission. Prior to the hearing thereon by the Commission, the Railroad Company and the Paper Company agreed that a rate of 90 cents per ton would be reasonable and satisfactory to both parties.
 

 The Railroad Company makes a rate on coal from Corning to Zanesville, and through Zanesville, via other carriers, to Philo, Ohio, of 76 cents per ton on coal going to Philo. This freight charge is divided between the Railroad Company and the other carriers. The amount thereof going to each carrier is not disclosed by the record. This 76-cent rate applies also on coal going to Philo from points south of Corning which are substantially the same distance from Philo that like points of loading are from Baltimore, Ohio. However, nearly all the coal going to Philo is mined and loaded within the yard limits of Corning, for the reason that there is a mine there located which produces a large amount of slack coal very much in demand in Philo by a plant in Philo, which generates electrical current for sale and distribution, but does not manufacture anything else. This plant consumes all the coal hauled by the Railroad Company to Philo, and, in addition thereto, consumes coal hauled to Philo from other mines by other carriers, at freight rates fixed by such carriers, thus making
 
 *123
 
 Philo a rate competing point. Baltimore is not a rate competing point, the New York Central being the only railroad running into or through Baltimore. The feature of competition evidently was one of the causes, though not the principal cause, which induced the Railroad Company to make the rate to Philo less than the rate to-Baltimore. Another cause was the desire of the Railroad Company to keep the coal mine located within the limits of the Corning yards in operation by supplying an additional nearby market for the surplus slack coal which the plant in Philo could use. This necessitated meeting the competitive freight rates adopted by other carriers on Philo coal.
 

 The actual cost to the Railroad Company of hauling coal to Philo is practically the same as is the actual cost to the Railroad Company of hauling coal to Baltimore from the same points. The distance from the loading points south of Corning to Baltimore and to Philo varies, according to location of loading points, but such variation involves only a very few miles at most, and the average haul is substantially the same distance, whether the coal be destined for Philo or for Baltimore. Distance alone does not solve the question submitted here.
 

 It does not follow that the 76-cent rate for Philo is the correct rate merely because it is 14 cents per ton lower than the 90-cent rate to Baltimore. The evidence established the fact that the 76-cent rate to Philo contains very little, if anything, of profit, over and above the actual cost of haulage, for the Railroad Company, and that it
 
 *124
 
 would not accomplish, justice between the parties to apply this rate to coal going to Baltimore even if the conditions and expense of making delivery at the two points were substantially the same, which they are not.
 

 Coal going to Philo is hauled by the Railroad Company to Zanesville. It is picked up by other carriers and hauled to Philo and there left on a siding, from which it is picked up by a switch engine, owned and operated by the electrical company, and conveyed to unloading points and spotted without any further attention from or expense to the railroad companies. Coal going to the Paper Company at Baltimore must be switched and spotted by a switching crew and engine of the Railroad Company, and the location of the plants of the Paper Company and the railroad sidings belonging to the Paper Company, and the grades in the switching yards near the plants of the Paper Company, are such as to entail upon the Railroad Company an expense of about $5 per car for switching and spotting the cars at Baltimore. On one of the switching tracks there is a drop of 11.38 feet in 1,000 feet of track, and on another track there is a drop of 24.01 feet in 936 feet of the track. The evidence on this subject shows a very unusual condition pertaining to the plants and tracks of the Paper Company, and on this account alone it is quite evident that it would be most unfair to the Railroad Company to apply the 76-cent rate for coal going to the Paper Company, at Baltimore.
 

 There is no manufacturing plant at Zanesville or at Philo whose product comes in competition in
 
 *125
 
 the general market with the manufactured product of the Paper Company. About 5,000 cars a year, counting inbound raw material and coal and outgoing manufactured product, are hauled and switched into and out of the plants of the Paper Company. The number of inbound cars, carrying coal only, constitutes in round figures about 10 per cent, of this aggregate number of cars. It is quite evident from the showing made before the Commission that the Paper Company feels that its freight rate on coal should be fixed at the lowest possible rate by the Railroad Company by reason of this amount of tonnage other than coal given to the Railroad Company by the Paper Company. There is no complaint made of any insufficiency of service on the part of the Railroad Company in handling the inbound raw material of the Paper Company or the outbound manufactured product of the Paper Company, nor is there any complaint that the freight rate charged on this tonnage of the Paper Company is anything other than fair and reasonable. It is quite evident that the relations of the Railroad Company and the Paper Company in this respect are beneficial to each other, and that the rates charged on this tonnage are entirely satisfactory. We see no proper bearing that this feature should have on the coal rates charged.
 

 Keeping in mind the holding of this court in the case of
 
 Hocking Valley Ry. Co.
 
 v.
 
 Public Utilities Commission,
 
 92 Ohio St., 362, 110 N. E., 952, that is to say, “This court will not substitute its judgment for that of an administrative board, created pursuant to an act of the Legislature, as to matters
 
 *126
 
 within its province. Before the court will interfere with an order of the railway commission, or its successors, it must appear from a consideration of the record that the action of the commission was unlawful or unreasonable” — we feel driven to the conclusion by the evidence that the rate of 90 cents per ton for coal going to the Paper Company at Baltimore is not an unfair or an unreasonable charge, and that the order of the Commission reducing the rate to 76 cents is an unreasonable and unfair order. It follows that the 90-cent rate on coal going to the Paper Company at Baltimore must be restored, and such will be the judgment of this court.
 

 Order reversed.
 

 Day, Robinson, Jones and Matthias, JJ., concur.